UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 13-129 (DWF/FLN) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Junior Tervil (4), | |
| Defendants | |

Karen Schommer, Assistant United States Attorney, for Plaintiff.
Daniel Gerdts for Defendant Tervil.

**THIS MATTER** came before the undersigned United States Magistrate Judge on October 9, 2013 on the parties' pretrial motions. Defendant Tervil moved to suppress identification evidence (ECF No. 109) and statements he made to special agents during the Government's investigation of a multi-million dollar tax-fraud scheme (ECF No. 110). The Court granted Tervil the opportunity to submit supplemental memoranda in support of these motions, but he did not file additional memoranda. ECF No. 118. These motions were referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons that follow, the Court recommends that Tervil's motions be **DENIED**.

## I. BACKGROUND

### A. Testimony of Special Agent Kenneth Fry

Kenneth Fry, a special agent with the criminal division of the Internal Revenue Service (IRS), testified at the October 9 hearing. Agent Fry recalled that he spoke with Tervil several times

1

during the course of the IRS's investigation into the tax-fraud scheme that is the subject of this case.[1] At least two of those conversations occurred in person; the others took place by phone. Agent Fry's contact with Tervil was facilitated through one of Tervil's relatives who informed Tervil that Fry wanted to speak with him. Tervil called Fry in July 2012. During this phone conversation, Fry informed Tervil that he was in Miami and wanted to speak with him in person to show him some documents and discuss his involvement with the alleged fraud. Tervil agreed and suggested they meet at a specific intersection in a residential neighborhood. Agent Fry and his colleague Nathan Price met Tervil at the time and location he suggested. Tervil brought two young children with him. The agents informed Tervil that he was not under arrest. Agent Fry testified that Tervil agreed to answer his questions and did not request an attorney. Tervil spoke to the agents for approximately one hour. He claimed that his identity was stolen and used as part of the alleged fraud. The agents accused Tervil of lying and informed him that they believed he was knowingly involved in the scheme.

Throughout the investigation, Agent Fry and his colleagues used a photo book that included thirty-four photographs of individuals they suspected were involved in the alleged tax-fraud scheme. Gov. Ex. 3. The photo book also includes several photos of residences associated with the scheme. *Id.* All of the individual photos are the same size, labeled with a number and obtained from the Department of Motor Vehicles. Agent Fry testified that when he used the photo book during the

---

[1]   On May 21, 2013, the United States of America filed a two-count indictment against Tervil and three co-conspirators, Ronnie Bussell, Christopher Torh and Frantz Pierre. ECF No. 1. Count one alleges conspiracy to defraud the government, in violation of 28 U.S.C. § 286. *Id.* Count two alleges monetary transactions in criminally derived property, in violation of 18 U.S.C. § 1957. *Id.* The indictment suggests that the conspiracy to commit these crimes started on or about July 2010 and extended through May 2011. *Id.* The defendants are accused of setting up fictitious businesses and bank accounts, filing false tax returns with stolen identities and directly depositing fraudulently obtained refunds into the bank accounts. *Id.*

investigation, he generally flipped through all of the photos and told the witness viewing the book to inform him when they recognized an individual. If the witness recognized someone, Fry would ask the witness to explain how they knew that individual. Agent Fry also testified that under some circumstances, the photo book was used to confirm the identity of a suspect mentioned by a witness. In these situations, the entire photo book was not necessarily shared with the witness. Agent Fry provided testimony about two specific witnesses who were shown the photo book: Nunziata Williams[2] and Deona Nguyen.[3] Both women identified Tervil by his first name, "Junior," prior to being shown the photo book. At William's May 2012 proffer session, Fry showed her the entire photo book and she correctly identified Tervil's photo. Similarly, in September 2013, Nguyen was shown the entire photo book and identified Tervil's photo as "Junior."

## II. ANALYSIS

### A.   All statements made by Tervil to the special agents were made voluntarily.

Tervil moves to suppress statements he made to law enforcement prior to his arrest on the basis that the statements were obtained as a result of unlawful and coercive interrogation techniques. First, the Government contends that Tervil has not met his burden of articulating specific facts that set forth a prima facie showing of illegality. *United States v. Losing*, 539 F.2d 1174, 1178 (8th Cir. 1976). Regardless, the Government notes that it will not seek to admit statements from its agent's phone conversations with Tervil into evidence and argues that the statements made by Tervil to special agents in Miami were voluntary and not coerced. The Court agrees.

The Fifth Amendment provides that no person "shall be compelled in any criminal case

---

[2]   Williams was allegedly involved with Tervil in setting up the fake businesses and associated bank accounts in Minnesota to facilitate the tax-fraud scheme.

[3]   Nguyen also had some alleged involvement in the Minnesota fraud conspiracy.

to be a witness against himself." In *Miranda v. Arizona*, the Supreme Court concluded that four specific *Miranda* warnings were necessary prior to custodial interrogation to "assure that the individual's right to choose between silence and speech remains unfettered throughout the interrogation process." 384 U.S. 436, 469 (1966).[4] However, Miranda protections are only triggered when a defendant is both in custody and being interrogated. *United States v. Hatten*, 68 F.3d 257, 261 (8th Cir. 1995). A defendant is "in custody" when he is either formally arrested or restrained to a degree comparable to a formal arrest. *California v. Beheler*, 463 U.S. 1121, 1125 (1983). Restraint should be deemed equivalent to an arrest when a reasonable person under similar circumstances would have understood the situation to be an arrest. *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984).

The Eight Circuit has developed a nonexclusive six-factor test for determining whether a defendant is in custody. The factors include: (1) whether the defendant was informed that questioning was voluntary and that the defendant was free to leave; (2) whether the defendant had freedom of movement during questioning; (3) whether the defendant initiated contact with authorities or voluntarily acquiesced to questioning; (4) whether officers employed coercive or deceptive tactics during questioning; (5) whether the atmosphere of questioning was dominated by officers; and (6) whether the defendant was arrested after questioning. *United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990).

In this case, Tervil voluntarily agreed to meet the special agents at an intersection in a residential Miami neighborhood of his choosing. He was informed that he was not under arrest and

---

[4] The four warnings include: (1) you have the right to remain silent; (2) anything you say can and will be used against you in a court of law; (3) you have the right to an attorney; and (4) if you cannot afford an attorney, one will be provided for you. *Miranca,* 384 U.S. at 478-79.

that he could leave at any time. Tervil does not argue that the agents used any specific deceptive interrogation tactics and the atmosphere was not dominated by officers—there were two agents at the scene and Tervil had two young children with him. Finally, Tervil was not arrested after his conversation with the officers. In sum, there is no evidence that the agents used coercive tactics when speaking with Tervil in Miami. Tervil's motion to suppress statements should be denied.

> **B.  The identification procedures used by the Government did not violate Tervil's Fifth and Sixth Amendment rights.**

Tervil also moves to suppress the identification evidence made against him by various witnesses who were shown the Government's photo book on the basis that the process violated his Fifth and Sixth Amendment rights. The Government contends that Tervil's constitutional rights were not violated because no photographic lineup was used during the investigation. Neither party cites to any case law in support of their argument.

The admissibility of identification evidence is subject to a two-step analysis that was articulated by the Supreme Court in *Mason v. Brathawaite.* 432 U.S. 98 (1977). Defendants who seek to suppress identification evidence must first show that the process used was "so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law." *United States v. DiTommaso*, 817 F.2d 201, 213 (2nd Cir. 1987) (citations omitted). If the first prong is met, then the Court must determine if the identification was sufficiently reliable. *Dunnigan v. Keane*, 137 F.3d 117, 128 (2nd Cir. 1998).

In this case, Tervil's initial memorandum in support of this motion makes no argument about how use of the photo book was unduly suggestive. Further, Agent Fry's testimony indicates that the identification procedures used by the Government were constitutional. Fry testified that Nunziata Williams and Deona Nguyen both mentioned Tervil by his first name, "Junior," prior to being shown

the photo book. After viewing the entire photo book, both identified Tervil's photograph as "Junior." Based on these facts, the Government's use of the photo book was not unduly suggestive of Tervil as a suspect. Tervil's motion to suppress identification evidence should be denied.

### III. RECOMMENDATION

Based upon the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant Tervil's motion to suppress statements (ECF No. 110) and his motion to suppress identification evidence (ECF No. 109) be **DENIED**.

DATED: January 9, 2014             _s/Frankin L. Noel_
                                                       FRANKLIN L. NOEL
                                                       United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **January 23, 2014** written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **January 23, 2014** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.